UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SEMI-MATERIALS CO., LTD. and SMC SHANGHAI, | ) ) ) |
| Plaintiff(s), | ) ) |
| vs. | ) Case No. 4:08CV434 JCH ) |
| MEMC ELECTRONIC MATERIALS, INC. and MEMC PASADENA, INC., | ) ) ) |
| Defendant(s). | ) ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant MEMC Electronic Materials, Inc.'s ("MEMC Electronic" or "Defendant") Motion for Summary Judgment on Counts IV and V, filed September 18, 2009. (Doc. No. 35). The matter is fully briefed and ready for disposition.

## BACKGROUND

An early step in the manufacture of polysilicon wafers is the melting down of raw polysilicon material at very high temperatures. (Defendants' Statement of Uncontroverted Material Facts in Support of Motion for Summary Judgment as to Counts IV and V ("Defendants' Facts"), ¶ 1). Once the polysilicon is melted, a silicon ingot or crystal is slowly pulled or extracted from the molten polysilicon. (Id.). Because the melting and crystal-pulling process is performed at very high temperatures, the mechanical complex in which the process is done is called the "hot zone," and the machinery and parts used in the process must be made from heat-resistant materials, typically graphite. (Id.). For some time, MEMC Electronic's affiliate corporation in Korea, MEMC Korea Corporation ("MKC"), used, and continues to use, graphite parts manufactured by SGL Carbon Korea Ltd. ("SGL Korea") in its crystal-pulling operations. (Id., ¶ 2).

According to Plaintiffs, on April 23, 1999, SGL Korea and World Tech Company ("World Tech") entered into a "Subagent Agreement," under which World Tech was appointed as SGL Korea's agent to sell graphite parts to a company named Posco Huels Co., Ltd. ("Posco Huels") in Korea. (Defendants' Facts, ¶ 3). Under the terms of the agreement, SGL Korea was to pay World Tech a commission on each such sale. (Id.). Plaintiff Semi-Materials Co., Ltd. is World Tech's successor-in-interest[1], and MKC is Posco Huels' successor-in-interest. (Id., ¶ 4). The Subagent Agreement became effective on April 22, 1999, and contained the following relevant provision:

> This Agreement shall be effective for 2 years from the effective date of this Agreement unless there is at least 3 months written notice to cancel from "Subagent" [World Tech and/or Semi-Materials] and/or "Company" [SGL Korea] prior to expiration date. And this agreement shall be renewed for every 1 year unless any written notice from "Subagent" and/or "Company" at least 3 moths (sic) prior to the each (sic) expiration date.

(Subagent Agreement, attached to Defendants' Motion for Summary Judgment as Exh. B, Article 5).

For a time, MKC ordered parts from SGL Korea through Semi-Materials. (Defendants' Facts, ¶ 7). According to Defendant, in 2006, as part of an effort to streamline its procurement procedures and cut costs, MEMC Electronic's Global Commodity Manager, Bob Conrad, negotiated a global MEMC Purchase Agreement--Goods and Services with SGL Carbon GmbH (the "Purchase Agreement"). (Defendants' Facts, ¶ 8, citing Defendants' Exh. C, filed under seal). MEMC Electronic's agreement with SGL Carbon GmbH ("SGL GmbH") provided for uniform global pricing on graphite parts from SGL GmbH applicable to MEMC Electronic and "all of its subsidiaries and affiliated companies" worldwide, and to SGL GmbH and its corresponding subsidiaries and affiliates. (Id., ¶ 9). The Purchase Agreement became effective on January 1, 2007,

---

[1] World Tech and Semi-Materials Co. Ltd., a Korean corporation, hereinafter collectively are referred to as "Semi-Materials." (Compl., ¶ 6).

and provided for MEMC Electronic and its corporate affiliates to purchase carbon parts directly from SGL GmbH and its corporate affiliates, in accordance with the pricing structure reflected in the agreement. (Id., ¶ 10).[2]

After the Purchase Agreement went into effect, MEMC Electronic discovered that SGL Korea parts still were being purchased by MKC through Semi-Materials, rather than directly from SGL Korea as provided for in the Purchase Agreement. (Defendants' Facts, ¶ 18). Mr. Conrad believed Semi-Materials' role in MKC's purchasing procedures injected unnecessary costs and complications, while providing no value return. (Id., ¶ 15). Accordingly, Mr. Conrad contacted SGL GmbH, and ordered them to sell directly to MEMC and its affiliates in compliance with the Purchase Agreement. (Id., ¶ 19).[3] Therefore, in January, 2008, SGL Korea provided Semi-Materials with written notice of SGL Korea's non-renewal of the Subagent Agreement. (Id., ¶ 24).[4]

Plaintiffs filed their Complaint in this matter on March 31, 2008, alleging Defendant MEMC Electronic interfered with the Subagent Agreement between Semi-Materials and SGL Korea.[5] (Doc. No. 1). Specifically, Plaintiffs allege MEMC Electronic, SGL Korea's largest customer, threatened SGL Korea that if it failed to terminate the Subagent Agreement and sell carbon graphite directly to

---

[2] Mr. Conrad testified that MEMC Electronic sought direct sales with SGL GmbH in order to simplify its worldwide purchasing process, and to remove unnecessary delay and costs from the process. (Defendants' Facts, ¶ 11). Mr. Conrad further testified that one of the primary purposes of the Purchase Agreement was to cease the use of intermediaries such as Semi-Materials, but the Purchase Agreement did not explicitly prevent SGL Korea from using Semi-Materials as its sales agent. (Defendants' Facts, ¶ 13 and Plaintiffs' Response thereto).

[3] MEMC Electronic did acknowledge that old or pending orders previously placed through Semi-Materials could be fulfilled with Semi-Materials' involvement. (Defendants' Facts, ¶ 21).

[4] Consistent with the terms of the Subagent Agreement, SGL Korea's notice was given more than 90 days in advance of the optional renewal date of April 21, 2008. (Defendants' Facts, ¶ 25).

[5] Plaintiffs further allege MEMC Electronic and MEMC Pasadena, Inc. violated certain exclusive sales representative agreements for the sale of polysilicon and silane in South Korea and China, claims not at issue in the present motion.

Defendant, it would cease doing business with SGL Korea. (Id., ¶ 24). As relevant here, Plaintiffs thus assert the following claims: Tortious Interference with Contract (regarding MEMC Electronic's alleged interference with the Subagent Agreement between Semi-Materials and SGL Korea) (Count IV); and Tortious Interference with Business Expectancy (same) (Count V). As stated above, Defendant filed the instant Motion for Summary Judgment on September 18, 2009, asserting there exist no genuine issues of material fact and it is entitled to judgment as a matter of law on Counts IV and V of Plaintiffs' Complaint. (Doc. No. 35).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Id. at 255. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Id. at 249.

## DISCUSSION

I. **Count IV Fails Because Plaintiffs Offer No Evidence That SGL Korea Breached The Subagent Agreement**

To succeed on a tortious interference claim in Missouri, Plaintiffs must prove: "(1) the existence of a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) a breach induced or caused by defendant's intentional interference; (4) the absence of justification; and (5) damages." Tamko Roofing Products, Inc. v. Smith Engineering Co., 450 F.3d 822, 829 (8th Cir. 2006) (internal quotations and citations omitted). "To prevail on this tort claim, a party must adduce substantial evidence supporting each and every element." Service Vending Co. v. Wal-Mart Stores, Inc., 93 S.W.3d 764, 769 (Mo. App. 2002) (citation omitted). In its Motion for Summary Judgment, MEMC Electronic asserts Count IV fails because Plaintiffs offer no evidence SGL Korea breached the Subagent Agreement in the first instance. (MEMC Electronic's Memorandum in Support of Motion for Summary Judgment on Counts IV and V, PP. 6-7). See Decker-Ruhl Ford Sales, Inc. v. Ford Motor Credit Co., 523 F.2d 833, 836 (8th Cir. 1975) ("[I]n order to maintain such an action [for tortious interference with contract rights] in Missouri, a plaintiff must show that an actual breach of contract occurred.").

Upon consideration, the Court finds there was no breach of the contract between Semi-Materials and SGL Korea. As noted above, Article 5 of the Subagent Agreement provided in relevant part as follows:

> And this agreement shall be renewed for every 1 year *unless any written notice from "Subagent" and/or "Company" at least 3 moths (sic) prior to the each (sic) expiration date*.

(Defendant's Exh. B, Article 5 (emphasis added)). It is undisputed that SGL Korea fulfilled its responsibilities under the Subagent Agreement, by providing Semi-Materials with written notice of its intent not to renew the Subagent Agreement on January 10, 2008, more than 90 days prior to the next expiration date of April 21, 2008. (Defendant's Facts, ¶¶ 24, 25, citing January 10, 2008, Letter from S. Kim to K. Park, attached to Defendant's Motion for Summary Judgment as Exh. E). Therefore, because Semi-Materials cannot prove a breach of its Subagent Agreement with SGL Korea, it cannot maintain an action against MEMC Electronic for tortious interference with contract. Decker-Ruhl Ford Sales, 523 F.2d at 836. See also Service Vending Co., 93 S.W.3d at 770 (finding no liability in the absence of evidence that the defendant's dealings with the plaintiff varied from its rights under the contract between the parties). MEMC Electronic's Motion for Summary Judgment on Count IV of Plaintiffs' Complaint will therefore be granted.

**II.     Count V Fails Because Semi-Materials Fails To Establish Several Elements Of Its Claim For Tortious Interference With Business Expectancy**

As stated above, to succeed on its tortious interference with business expectancy claim, Semi-Materials must prove: "(1) the existence of a....valid business expectancy; (2) defendant's knowledge of the....relationship; (3) a breach induced or caused by defendant's intentional interference; (4) the absence of justification; and (5) damages." Tamko Roofing Products, 450 F.3d at 829 (internal quotations and citations omitted). Moreover, liability for tortious interference, "'cannot be predicated upon speculation, conjecture or guesswork, and no fact essential to submissibility can be inferred absent a substantial evidentiary basis.'" Id. at 830 (quoting Cmty. Title Co. v. Roosevelt Fed. Sav. & Loan Ass'n, 670 S.W.2d 895, 905 (Mo. App. 1984)).

**A.     Count V Fails Because Semi-Materials Cannot Prove A Valid Expectancy**

"A business expectancy need not be based on an existing contract." BMK Corp. v. Clayton Corp., 226 S.W.3d 179, 190 (Mo. App. 2007) (citation omitted). Rather, Missouri courts hold that "[a] probable future business relationship that gives rise to a reasonable expectancy of financial benefit is enough." Stehno v. Sprint Spectrum, L.P., 186 S.W.3d 247, 251 (Mo. 2006) (citation omitted). Further, a regular course of similar prior dealings also may suggest a valid business expectancy. Slone v. Purina Mills, Inc., 927 S.W.2d 358, 370 (Mo. App. 1996). A business expectancy must be more than a "mere hope," Stehno, 186 S.W.3d at 250, however, and cannot be too "indefinite or remote." Weicht v. Suburban Newspapers of Greater St. Louis, Inc., 32 S.W.3d 592, 598 (Mo. Ct. App. 2000). See also Wash Solutions, Inc. v. PDQ Mfg., Inc., 395 F.3d 888, 895 (8th Cir. 2005) (internal quotations and citations omitted) ("In order to have a claim for interference with a valid business expectancy, it is necessary to determine if the expectancy claimed was reasonable and valid under the circumstances alleged.").

Upon consideration, the Court finds that a genuine issue of material fact prevents it from determining whether Semi-Materials possessed a reasonable business expectancy that its Subagent Agreement with SGL Korea would continue. Specifically, the Court notes that after its initial two year term, the Agreement was renewed annually without incident from 2001 through 2007. (Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment as to Counts IV-V ("Plaintiffs' Opp."), PP. 5-6). SGL Korea continued to supply parts to MKC through Semi-Materials even after the Purchase Agreement went into effect. (Defendants' Facts, ¶ 18). Only after Mr. Conrad contacted SGL GmbH, and ordered it to sell directly to MEMC and its affiliates in compliance with the Purchase Agreement, did SGL Korea provide Semi-Materials with written

notice of its non-renewal of the Subagent Agreement. (Id., ¶¶ 19, 24).[6] Missouri courts hold that disputes over the reasonableness of a business expectancy are best left to a jury, and so this portion of Defendant's Motion for Summary Judgment will be denied. Londoff v. Walnut Street Securities, Inc., 209 S.W.3d 3, 10 (Mo. Ct. App. 2006).

### B. Count V Fails Because Semi-Materials Offers No Evidence That MEMC Electronic Interfered Through "Improper Means"

"To establish the absence of justification element, the plaintiff must establish that the defendant lacked a legal right to justify his actions." Avidair Helicopter Supply, Inc. v. Rolls-Royce Corp., 2009 WL 3161168 at *5 (W.D. Mo. Sep. 28, 2009) (internal quotations and citation omitted). "If the defendant has a legitimate interest, economic or otherwise, in the expectancy the plaintiff seeks to protect, then the plaintiff must show that the defendant employed improper means in seeking to further only his own interests." Stehno, 186 S.W.3d at 252 (citation omitted). Competitive conduct is justified, as is interference taken to avoid a "substantial loss." Environmental Energy Partners, Inc. v. Siemens Building Technologies, Inc., 178 S.W.3d 691, 703 (Mo. App. 2005).

> One who has an existing economic interest in another's business affairs is privileged to interfere with a business expectancy to protect his own economic interest and is not liable for such interference if his action was one which he had a definite legal right to take without any qualification. That is, protecting one's economic interest constitutes justification for interference with a business expectancy unless one employs improper means to protect that interest. Improper means are those which are independently wrongful notwithstanding injury caused by the interference.

---

[6] The notice of non-renewal itself provides support for the validity of Semi-Materials' business expectancy, stating in relevant part as follows: "SGL has enjoyed a good working relationship with you during the term of the Agreement, but our business needs have now changed with reference to the End Customer identified in the Agreement [MKC]....On behalf of SGL, I would like to thank you for your efforts and support in promoting our products over the years. Although our formal Agreement will be terminated, we hope we can continue to do business in other market opportunities." (Defendants' Exh. E).

Id. (citations omitted). Improper means are, "those that are independently wrongful, such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or common law." Avidair Helicopter, 2009 WL 3161168 at *5 (internal quotations and citations omitted).

Upon consideration, the Court finds a question of fact remains with respect to whether MEMC Electronic's alleged interference with the Subagent Agreement was justified. As noted above, even assuming MEMC Electronic had a legitimate right to interfere in order to protect its economic interest, it was forbidden to do so through improper means. Attached to Plaintiffs' response is an e-mail from Mr. Conrad at MEMC Electronic to Yad Singh of SGL, stating in relevant part as follows:

> As a Corporation I very specifically told you not to permit or sell MEMC product through these outlets (i.e., SMC and Semi-Materials) as of Jan of this year. I agree we have an issue IF these were new orders. I had already told you and MKC to stop buying/selling through this third party. What part of that direction was not clear?....
>
> Your sales agreements are not our concern, our costs are and we expect a cost reduction once the middle man is gone....
>
> CEASE immediately any direct sales to MKC through Semi or SMC.

(Plaintiffs' Opp., attached Exh. C (emphasis in original)). Improper means include threats, and the Court finds it is best left to the jury to determine whether MEMC Electronic engaged in threatening behavior in a quest to terminate the relationship between SGL Korea and Plaintiffs.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that MEMC Electronic's Motion for Summary Judgment on Counts IV and V (Doc. No. 35) is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that MEMC Electronic's Motion for Summary Judgment on Count IV is **GRANTED**, and Count IV of Plaintiffs' Complaint is **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that MEMC Electronic's Motion for Summary Judgment on Count V is **DENIED**.


Dated this 4th day of December, 2009.


                                       /s/ Jean C. Hamilton
                                       UNITED STATES DISTRICT JUDGE